# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DELGADO,<br><br>        Plaintiff,<br><br>    v.<br><br>GEOFFREY NOBLE, in his official capacity as Superintendent of the Massachusetts State Police; JOHN DOES 1 & 2 in their official capacities as Massachusetts State Police officers and in their personal capacities; TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS; BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court; MICHAEL d'ENTREMONT, in his official capacity as Chief of the Police Department of the Town of Dedham; and MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney<br><br>        Defendants. | Civil Action No. 1:25-cv-10818-RGS |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, AN INJUNCTION PENDING APPEAL

John Delgado was walking on a public sidewalk, talking to a news reporter, when he was accosted by two Massachusetts State Police officers. The police gave an unconstitutional command for Delgado to leave a public space on which he had every right to be present, and John Doe 1 violently tore off a sticker from Delgado's jacket. The police were purporting to enforce an unconstitutional and unlawful Prior Restraint Zone imposed by a state judge acting outside her authority in violation of the First Amendment and the Fourteenth Amendment.  This violation of Delgado's First and Fourth Amendment rights cannot be allowed to recur.

The Massachusetts State Police are over-zealously using the pretext of a Prior Restraint Zone to restrict lawful speech and movement. By unlawfully prohibiting even expressive content on a peaceful citizen's clothing and assaulting and battering them because the police do not like critical expression, they are over the line.  This Court is requested to enjoin the enforcement of the Prior Restraint Zone on its face and as applied by the State Police.  Specifically, Plaintiff seeks an injunction under all counts of his First Amended Complaint.  Pursuant to Fed. R. Civ. P. 65(a)(2), Plaintiffs request that the trial on the merits of all claims be advanced and consolidated with the hearing on this motion for preliminary injunction.

## 1.0      Factual Background[1]

Karen Read was indicted in Norfolk County, Massachusetts for John O'Keefe's murder. The case has drawn significant attention, including criticism aimed toward Judge Beverly Cannone.  Cannone is the presiding judge in the Read prosecution, in *Commonwealth v. Read,* Case No. 2282CR00017 (hereinafter the "*Read* Case").  The Norfolk County District Attorney's

---

[1] Unless otherwise stated, all facts are drawn from the First Amended Complaint.  Delgado has verified the facts set forth therein in his declaration at **Exhibit A** ("Delgado Decl.") at ¶ 3.

- 2 -
Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

office, led by Michael W. Morrissey, is prosecuting the *Read* Case on behalf of the Commonwealth. A 2024 trial resulted in a mistrial after the jury failed to reach a unanimous decision (hereinafter "first trial"). A second trial in the *Read* Case began on April 1, 2025 (hereinafter "second trial").

Prior to the first trial, the Commonwealth sought a "buffer zone" beyond the grounds of the courthouse to prohibit demonstrating within 500 feet of the court. Massachusetts citizens moved to intervene to oppose the buffer-zone motion. Justice Cannone denied intervention and *declared that the citizens had no right to intervene*, even though the sought-after order would directly affect them. Judge Cannone granted the Commonwealth's motion, asserting that Read's right to a fair trial overcame everyone else's First Amendment rights. *See* First Amended Complaint, Exhibit A. Speech other than "demonstrat[ions]" was unrestricted.

In advance of the second trial, the Commonwealth again sought a buffer zone, but with a larger area (encompassing private property and traditional public fora, including public sidewalks and other areas). Without an opportunity for affected persons to intervene or be heard, Judge Cannone issued an Order on March 25, 2025, granting the motion, asserting that the basis for the first motion warranted a larger buffer zone for the second trial, and expressly ordered that:

> no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting.

*See* First Amended Complaint, Exhibit C (hereinafter "Second Prior Restraint Order").

Massachusetts State Police officers are harassing citizens on public sidewalks now – threatening them with arrest for even being within 200 feet of the Norfolk County Courthouse and

- 3 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

violently accosting them, destroying their property. They are doing this under color of the Second Prior Restraint Order.

On April 1, 2025, Plaintiff was walking on the sidewalk near the Courthouse, inside the "buffer zone." He was being interviewed by Michel Bryant, a Host and Producer with Justice Served TV. Bryant took video that he streamed online entitled "Arrest Threats by Mass Staties in #KarenRead Case." A copy of the video appears at Exhibit D to the First Amended Complaint. Said video streamed live from Bryant's phone to YouTube at 9:33 am EDT on April 1, 2025.[2]

Delgado was wearing a blue sticker that said, "Real Justice for John O'Keefe FKR." This sticker offended Defendants and resulted in a one-sided altercation between Doe 1 (an unidentified State Police officer) and Delgado: Defendant Doe 1 told Delgado, "That's gotta go" in reference to Delgado's sticker. Defendant Doe 1 then ripped Delgado's sticker off his jacket. Defendant Doe 1 then threatened Delgado, telling him "I don't want to see you walking by here again."

Delgado wishes to continue to walk in peace within the buffer zone, wearing whatever he likes – including expressive content.[3] However, he is chilled in doing so because of the threat of arrest and unlawful orders by Massachusetts State Police on April 1 in their enforcement of the buffer zone. Delgado credibly fears further violence and misuse of authority from the Massachusetts State Police. *See* Delgado Decl. at ¶ 4. Plaintiff reasonably fears that the State

---

[2] Bryant later uploaded this video of the interaction to his YouTube Channel, JSTV – Justice Served TV, on April 2, 2025, as part of his reporting, at  https://www.youtube.com/watch?v=rI4M9y-6Xec. The video was part of the longer broadcast "Karen Read Trial: Jury Selection Begins! Michel LIVE at the Courthouse | Linda Breaks It All Down" at https://www.youtube.com/live/gnRtGAD4LSM.

[3] The right to do so could not be more clearly established. *See Cohen v. California*, 403 U.S. 15 (1971) (upholding a citizen's right to wear a jacket in a courthouse with the phrase "Fuck the Draft" emblazoned on it).

- 4 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

Police, including Defendants Doe 1 and Doe 2, under the control and direction of Defendant Geoffrey Noble, Superintendent of the Massachusetts State Police, will continue to retaliate against him for expressing himself, interfere with his First Amendment protected activities extrajudicially by assaulting him, or simply arrest him for doing so. *Id*. at ¶ 5. Delgado reasonably fears that the Norfolk County DA, under the control and direction of Defendant Morrissey, will seek his prosecution for violation of the Order if he engages in protected speech. *Id*. at ¶ 7. Delgado also reasonably fears that Judge Cannone will attempt to hold him in contempt if he continues to engage in protected speech in the vicinity of the courthouse. *Id*. at ¶ 8.  Thus, Plaintiff comes to this Court seeking injunctive relief invalidating the Prior Restraint Zone, or if it is permitted to survive, prohibiting Defendants from enforcing the Prior Restraint Zone against him as applied – to prohibit peacefully and quietly wearing a sticker within a certain distance from the Norfolk County Superior Court.

**2.0    Legal Standard**

Fed. R. Civ. P. 65 injunctive relief.[4] A temporary restraining order or preliminary injunction must (1) state the reasons why it issued; (2) state its specific terms; and (3) describe in reasonable detail the act or acts restrained or required. Fed. R. Civ. P. 65(d). Injunctive relief should be issued if: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) the balance of equities tips in plaintiff's

---

[4] If this Court declines to enter the injunction, Plaintiffs request that the Court err on the side of the Constitution and at least grant an injunction pending appeal per Fed. R. Civ. P. 62(d).  Such is proper if the movant makes "a strong showing that they are likely to succeed on the merits, that they will be irreparably injured absent emergency relief, that the balance of the equities favors them, and that an injunction is in the public interest." *Together Emples v. Mass Gen. Brigham Inc*., 19 F.4th 1, 7 (1st Cir. 2021). The test is nearly identical to the standard test for a preliminary injunction. *See Winter v. NRDC, Inc*., 555 U.S. 7, 20 (2008).

- 5 -
Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). "In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (*per curiam*). Fed. R. Civ. P. 65(a)(2) provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Such consolidation is appropriate where (a) "the record is complete and ripe for review[,]" and (b) there is "no reason for delay" especially where "the evidence reasonably admits of only one outcome." *Bays' Legal Fund v. Browner*, 828 F. Supp. 102, 105 n. 3 (D. Mass. 1993).

**3.0    This Court Should Enjoin the Order and its Enforcement**

### 3.1    Plaintiff has Standing

A plaintiff has standing when he intends to engage in a Constitutionally protected activity, which has been proscribed by the government, and there is a credible threat of prosecution. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56-57 (1st Cir. 2003) (finding standing when a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences"). A plaintiff has standing if a challenged statute or regulation operates to "chill" the plaintiff's exercise of his First Amendment rights. *Doe v. Bolton*, 410 U.S. 179, 188 (1973). Plaintiff was engaged in First Amendment protected activity, walking while wearing a sticker on his jacket. *Cohen v. California*, 403 U.S. 15 (1971). Defendants threatened him with arrest for violating the Prior Restraint Zone if he continued to do so, assaulted him and seized his sticker, and Plaintiff reasonably fears he will be held in contempt by Judge Cannone if he continues to exercise his rights. Plaintiff has standing to bring suit and seek this injunction.

- 6 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

### 3.2    Plaintiff is Likely to Succeed

A plaintiff must allege two "essential elements" for a § 1983 cause of action: "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Finamore v. Miglionico*, 15 F.4th 52, 58 (1st Cir. 2021) (*quoting Chongris v. Bd. of Appeals of Andover*, 811 F.2d 36, 40 (1st Cir. 1987)).  Defendant Cannone, without due process, entered an unconstitutional order which provided the justification for state police officers acting under color of law to violate Delgado's First Amendment right to free speech and Fourth Amendment freedom from unreasonable seizures and excessive force. Defendants have prohibited him from quietly and unobtrusively walking while wearing a sticker on  matter of public concern, while in a traditional public forum. Defendants cannot be permitted to interfere with such activity on public sidewalks or assault him and destroy his property should he do so. He is likely to succeed on the merits.

### 3.2.1    Plaintiff's First Amendment Rights are being Violated

Judge Cannone violated Plaintiffs' constitutional rights by issuing her Second Prior Restraint Order, without due process, in an *ultra vires* act, and the remaining Defendants violated his rights by retaliating against him for engaging in protected speech. Because Defendants' actions infringe on Plaintiff's First Amendment rights, Defendants must justify their actions. *Comcast v. Mills*, 435 F. Supp. 228, 233 (D. Me. 2019) (citing *Reilly v. Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017)); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 509 (1969). Delgado's sticker does not within one of the few "historic and traditional categories of expression long familiar to the bar" for which content-based restrictions on speech are permitted. *United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (cleaned up).

- 7 -

Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

In traditional public spaces, like the sidewalks near a courthouse, "the rights of the state to limit the exercise of First Amendment activity are 'sharply circumscribed.'" *Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011) quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). "There is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs[.]" *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721 (2011) (cleaned up).

Content-based regulations are subject to strict scrutiny, which requires the government to demonstrate "a compelling interest and . . . narrow[] tailor[ing] to achieve that interest." *Reed v. Gilbert,* 576 U.S. 155, 155 (2015) (*quoting Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Narrow tailoring in the strict scrutiny context requires the restriction to be "the least restrictive means among available, effective alternatives." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004). Defendants' actions fail strict scrutiny.

There is no compelling interest in prohibiting wearing a sticker on the sidewalks in front of the courthouse nor within any radius of the courthouse. Plaintiff has not done anything that would rise to "serious evil" that justifies the threats of arrest imposed by Defendants. *United States v. Treasury Employees*, 513 U.S. 454, 475 (1995). When issuing the unconstitutional order establishing the Prior Restraint Zone, Judge Cannone purported to be protecting Ms. Read's right to a fair trial by prohibiting "demonstrations,"[5] but she had no power to impose the Order, as she has no power outside the courthouse over strangers to a proceeding. Even if the Order were legally

---

[5] Plaintiffs do not concede this is the true justification or that it is sufficient to justify the order. Further, Ms. Read did not seek the prior restraint—the Commonwealth did. The mere presence of sticker-wearers does not and could not compromise Ms. Read's right to a fair trial. If Ms. Read believes a man walking down the street wearing a sticker is a threat to her Sixth Amendment rights, she has never expressed that view, despite having a phalanx of lawyers who could.

- 8 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

imposed, and thus not facially invalid, it is invalid as applied to Delgado. Whatever interest Judge Cannone intended to advance, the Order contains no standards channeling officers' discretion toward that interest. Instead, the Order "vests unbridled discretion in a government official over whether to permit or deny expressive activity," *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755 (1988), and its sweep is far broader than necessary to accommodate any legitimate government interest. This is borne out by the violent enforcement over a mere sticker.

It is "well established that "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Reed*, 576 U.S. at 168-69 (quoting *Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N. Y.*, 447 U.S. 530, 537 (1980)). Even facially content-neutral regulations will be considered content-based if they cannot be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, only speech related to the state case is prohibited. No one else was accosted for any message on their clothing, and most outerwear contains messaging promoting the designer/manufacturer.

Sidewalks and streets and parks outside a courthouse are given greater First Amendment deference than the inside of the courtroom. *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 817 (1985). Public streets and sidewalks, "are presumptively traditional public forums, and the Supreme Court has repeatedly reaffirmed their status as places for expressive activity." *Watchtower Bible & Tract Soc'y of N.Y., Inc v. Jesus*, 634 F.3d 3, 11 (1st Cir. 2011); *see also McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (holding unconstitutional a no-protest zone that was only 35 feet). "For the First Amendment does not speak equivocally. . . . It must be taken as a command of the broadest scope that explicit language, read in the context of a liberty-loving

- 9 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

society, will allow." *Bridges v. California*, 314 U.S. 252, 263 (1941). On its face, the Order "restricts access to traditional public fora" and the State Police have used it to crack down on all First Amendment activity, including lawful newsgathering. *See, Derosier, supra.*

Defendants are expected to argue the Second Prior Restraint Order is a content-neutral regulation because it changes the location of the content. Even facially content-neutral regulations are content-based if they cannot be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The regulation in *Ward* was about volume and expressly had nothing to do with content. In the challenge to the buffer zone order for the first trial, made by different individuals, the Massachusetts Supreme Judicial Court determined that it was content neutral, because it had an "incidental effect on some speakers or messages but not others" citing *Ward. Spicuzza v. Commonwealth*, 494 Mass. 1005, 1008 (2024). In actuality, one must directly look at the content of the speech barred under the first and second Orders from Judge Cannone. Commercial speech advertising a nearby café is permitted. An individual may hold up a sign within the Zone that says "Marry Me" or "Buy Gold." But if the sign says "Impeach Judge Cannone," it is barred. There is nothing "incidental" about it—it is expressly aimed at content.

Assuming, *arguendo*, the "buffer zone" is content neutral, such restrictions are subject to intermediate scrutiny, meaning they must be "narrowly tailored to serve and significant government interest, and … leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The order is not narrowly tailored—Judge Cannone could simply instruct jurors to ignore the demonstrations or take other corrective action. The order need not be directed at such a broad amount of speech. And, it does

- 10 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

not leave open ample alternative channels—the news media cover the area closest to the courthouse, leaving Plaintiff unheard. The *Spicuzza* Court asserted it was narrowly tailored because 200 feet is less than the original 500 feet the Commonwealth requested, but that does not justify 200 feet. 494 Mass. at 1008.[6] Thirty feet is enough to ensure passage for those who need access. As to the fear of extraneous influence (*id.*), curative jury instructions are commonplace.[7] While the *Spicuzza* Court asserted there were alternative channels, it made this pronouncement in the absence of evidence and identified none. 494 Mass. at 1008. Since Judge Cannone did not properly narrow her order, it should be enjoined, along with attempts to enforce it.

### 3.2.2    Defendants' Actions Constitute a Prior Restraint

"The principal purpose of the First Amendment's guaranty is to prevent prior restraints." *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986). When, as here, a prior restraint forbids pure speech, not speech connected to any conduct, "the presumption of unconstitutionality is virtually insurmountable." *Id*. "Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 530, 559 (1976). "The Supreme Court has roundly rejected prior restraint." *Kinney v. Barnes*, 443 S.W.3d 87, 91 n.7 (Tex. 2014) (citing Sobchak, W., *The Big Lebowski*, 1998). Prior restraints "bear a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

When a trial court tries to take away First Amendment rights *in its very realm – the*

---

[6] The Spicuzza Court also specifically excluded sidewalks from its analysis. *Spicuzza v. Commonwealth*, 494 Mass. 1005, 1008 (2024).

[7] Courts, for example, routinely instruct jurors to ignore protestors who remind jurors of their power to acquit against the evidence (also known as "jury nullification"), which instructions are abided. *See, e.g., United States v. Kleinman*, 880 F.3d 1020, 1031 (9th Cir. 2018).

- 11 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

*courthouse itself*, the Supreme Court requires that it make specific findings justifying closure. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 558 (1980). Here, Judge Cannone went beyond her realm of the courthouse, and issued an order that purports to restrict speech in a traditional public forum.  There are cases discussing *legislative* authority over such areas, such as *Cox v. Louisiana,* 379 U.S. 536 (1965). But Plaintiff cannot find a single case where a Court purported to command contempt authority over demonstrators outside the courthouse grounds.  Moreover, Plaintiff has never engaged in any conduct that would warrant a prior restraint. If Paul Robert Cohen can wear a jacked that says "Fuck the Draft" inside a courthouse, Delgado can wear his inoffensive sticker on the sidewalks outside of the courthouse. *Compare Cohen, supra.*  The Court must immediately act to end the ongoing prior restraint.

### 3.2.3   Doe 1 Violated Delgado's Fourth Amendment Rights

Defendant Doe 1 violated Delgado's Fourth Amendment rights twofold:  in the use of unreasonable force against him and in the seizure of his sticker.  While the value of the sticker may be nominal, the Constitution does not authorize state officials to haphazardly seize any and all property of a nominal value.  And it certainly does not condone assaulting citizens in the process of doing so.  If a citizen cannot feel safe walking down the public sidewalk, lest an armed police officer stop him and seize his expressive property, then we are not in the United States anymore.

A "seizure" under the Fourth Amendment "occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113.  Destruction of property is a Fourth Amendment seizure.  *See id*. at 124-25; *Maldonado v. Fontanes,* 568 F.3d 263, 270-71 (1st Cir. 2009) (holding the Fourth Amendment was violated when a dog was killed, citing cases deeming it to be a seizure as destruction of

- 12 -
Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

property).  Doe 1 had no warrant to seize Delgado's sticker, and:

> a warrantless search or seizure is "per se unreasonable[] unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971). And he is right that "[t]o show exigent circumstances, the police must reasonably believe that there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant," like "when delay would risk the destruction of evidence"  — with our caselaw requiring that the police have "an objectively reasonable basis" for believing that evidence destruction "is likely to occur." *See United States v. Samboy*, 433 F.3d 154, 158 (1st Cir. 2005) (quotation marks omitted).

*Belsito Communs., Inc. v. Decker*, 845 F.3d 13, 24-25 (1st Cir. 2016).  Here, there was no basis for a warrant, let alone any "compelling necessity."  Even if the sticker was prohibited, Delgado should have been given a chance to cover it or leave, rather than being detained while police destroyed it.  This Court must enjoin Defendants to ensure Plaintiff's property will be protected.

Similarly, Delgado requires protection against Defendants' unreasonable force against him.  The Fourth Amendment prohibits officers from "exceed[ing] the bounds of reasonable force in effecting an arrest or investigatory stop." *Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010) (*citing Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).  To demonstrate a violation based on excessive force, "a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." *Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007). To determine whether force was unreasonable, courts "balance the individual's interest against the government's weighing three non-exclusive factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Raiche*, 623 F.3d at 36 (internal quotations and alterations omitted).  Delgado was neither arrested nor the subject of an investigatory stop, and the use of force against him was excessive under the

- 13 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

circumstances.  There was no crime.  Wearing a sticker posed no threat to anyone.  Nor was he resisting or evading.  The use of force, no matter how minimal, was unreasonable.  Plaintiff recognizes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation and citation omitted).  However, that does not mean that *every* minor battery is allowable—some may nonetheless violate the Fourth Amendment. *Compare Murphy v. May,* 714 F. Supp. 3d 851 (E.D. Mich. 2024).  There was no reason for Doe 1 to lay hands on Delgado, and injunctive relief is necessary to prevent future misconduct by Defendants.

### 3.2.4    Plaintiff Deserved Due Process – It Was Denied

It is an affront to due process that a court can deprive hundreds of people of their First Amendment rights without an opportunity to be heard.  Judge Cannone's order was issued without jurisdiction over Plaintiff, *ex parte,* and without authority.  Judge Cannone has no authority outside the courthouse complex. Controlling traditional public fora (sidewalks) and private property is not essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases, else such orders would've been commonplace for centuries.  Nor is it part of the ancillary functions.  Judge Cannone undertook land-use regulation, the province of the legislature or town.  Restrictions on nonparty speech, such as protests or publications, face strict scrutiny. *In Care and Protection of Edith*, a juvenile court's attempt to restrict nonparty media coverage was struck down for overbreadth and lack of necessity (421 Mass. 703). *See also Shak v. Shak* (2020)( a Probate Court declined to extend restrictions to nonparties absent evidence of their direct involvement) (484 Mass. 658).

- 14 -
Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

Procedural due process is protected by the Fourteenth Amendment, which reads, in relevant part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." The Massachusetts Constitution also protects procedural due process. *Duarte v. Commissioner of Revenue*, 451 Mass. 399, 412 n.20 (2008) (quoting *Pinnick v. Cleary*, 360 Mass. 1, 14 n.8 (1971)) (holding that "Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and arts. 1, 10 and 12 of its Declaration of Rights, are the provisions in our Constitution comparable to the due process clause of the Federal Constitution"). In Constitutions, the "fundamental requirement of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 412 (quotes and citation omitted). "[T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

There was no meaningful opportunity to be heard— it was issued on an *ex parte* basis. *Ex parte* communications can "shadow the impartiality, or at least the appearance of impartiality," of a proceeding and "may, in some circumstances, constitute a deprivation of due process of law." *Grieco v. Meachum*, 533 F.2d 713, 719 (1st Cir. 1976), cert. denied, 429 U.S. 858 (1976), *overruled on other grounds by Maine v. Moulton*, 474 U.S. 159 (1985). Here, Judge Cannone only heard from the Commonwealth. The *Spicuzza* Court was glaringly silent on the question of due process. Thus, the *ex parte* motion by the Commonwealth denied Plaintiff his due process.

- 15 -
Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

It is fundamental that a court cannot bind non-parties who are not brought within the court's jurisdiction. Due process requires a court to have general or specific jurisdiction over a defendant to avoid "offend[ing] traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations omitted). Similarly, jurisdiction typically does not attach until service of a writ or other process. *Chisholm v. Gilmer*, 299 U.S. 99, 102-103 (1936). A judge cannot rule by fiat over any territory, both public and private, and any person outside her courthouse, irrespective of jurisdiction.[8] As the First Circuit observed:

> a federal court will not impose judgment on a party that is not offered the opportunity to defend itself. *Lambert*, 355 U.S. at 228. The idea that process is not only due but must be duly provided is so "universally prescribed in all systems of law established by civilized countries," *Twining v. New Jersey*, 211 U.S. 78, 111 (1908), that courts have only seldom to remind litigants that such is the case. *See, e.g., Brown v. American Nat. Bank*, 197 F.2d 911, 914 (10th Cir. 1952) ("It is a familiar rule of frequent enunciation that judgment may not be entered with binding effect against one not actually or constructively before the court."); *Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal. App. 3d 699, 717 (1989) ("Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California Constitutions. . . . Notice and a chance to be heard are essential components to the trial court's jurisdiction and for due process. Without jurisdiction over the parties, an *in personam* judgment is invalid."); *Demoulas v. Demoulas*, 428 Mass. 555, 591 (1998) ("The judge did not have jurisdiction over nonparties, and we cannot make awards in favor of nonparties. .").

*Wilson v. Town of Mendon*, 2002 U.S. App. LEXIS 4352, *17-19 (1st Cir. Mar. 19, 2002). Here, Plaintiffs were never brought within Judge Cannone's jurisdiction and her order cannot bind them.

The order's vagueness further evidences a deprivation of due process. The order, like any regulation, must define the offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and

---

[8] To suggest otherwise would mean that Judge Cannone's order is a general warrant that leaves "to the discretion of the executing officials the decision as to which persons should be arrested[,]" an affront to the Fourth Amendment. *Steagald v. United States*, 451 U.S. 204, 220 (1981)

- 16 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A great degree of specificity and clarity of such notice and restriction is required when First Amendment rights are at stake. *Gammoh v. City of La Habra*, 395 F.3d 1114, 1119 (9th Cir. 2005); *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1057 (9th Cir. 1986). A regulation is vague if it either fails to place people on notice of exactly which conduct is prohibited, or if the possibility for arbitrary enforcement is present. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). The Second Prior Restraint Order is a vague, unconstitutional regulation. Government regulations which rely on a viewer's subjective interpretation of facts are void for vagueness. *Morales*, 527 U.S. at 56-64 (holding a provision criminalizing loitering, which is defined as "to remain in any one place with no apparent purpose," void for vagueness because the provision was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene"); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554-55 (9th Cir. 2004) (holding a statute requiring physicians to treat patients "with consideration, respect, and full recognition of the patient's dignity and individuality" void for vagueness because it "subjected physicians to sanctions based not on their own objective behavior, but on the subjective viewpoint of others").

*Morales* provides a useful guidepost for when enforcement of a statute or regulation may be unconstitutionally vague:

> If the police are able to decide arbitrarily which members of the public they will order to disperse, then the Chicago ordinance becomes indistinguishable from the law we held invalid in *Shuttlesworth v. Birmingham*, 382 U.S. 87, 90 (1965). Because an officer may issue an order only after prohibited conduct has already occurred, it cannot provide the kind of advance notice that will protect the putative loiterer from being ordered to disperse.

527 U.S. at 58-59. Here, Plaintiffs have no precise ability to know whether their speech is prohibited. Is a sign saying "Judge Cannone likes Pineapple on Pizza" prohibited? The order is

- 17 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

vague and subject to arbitrary and discriminatory enforcement.  Thus, the issuance of the Second Prior Restraint Order violates Plaintiff's 14th Amendment right to due process.

### 3.3    No Abstention Doctrine Applies

No abstention doctrines are applicable here. As Defendants conceded in the related *Grant* case, *Rooker-Feldman* abstention does not apply (ECF No. 31 at 16:11 in *Grant* case), as that doctrine does not bar actions by a nonparty to an earlier suit, and Plaintiff is not a party to the Karen Read trial. Abstention under *Younger v. Harris*, 401 U.S. 37 (1971), does not apply, either, as that doctrine may only apply when litigation between the same parties and raising the same issues is pending in state court, neither of which is present here. *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 42-43 (1st Cir. 2012).

The Court need not be concerned with Eleventh Amendment immunity regarding claims against Judge Cannone. Ordinarily, a judge would be immune from such claims. However, the Eleventh Amendment does not apply to a government officials' *ultra vires* actions, meaning where such officials act "without any authority whatsoever." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984). As already explained, Judge Cannone had no authority whatsoever to impose a prior restraint zone well outside the confines of the courthouse that encompassed both traditional public forums and private property. Her actions were *ultra vires*, and she does not enjoy Eleventh Amendment immunity.

### 3.4    There is Irreparable Injury that will Continue if Not Enjoined

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In such cases "a plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of

- 18 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

plaintiff's First Amendment claim." *WV Assn'n of Club Owners and Fraternal Srvs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009).

"Irreparable harm is presumed in cases of constitutional violations." *Castillo v. Whitmer*, 823 Fed. App'x 413, 417 (6th Cir. 2020). "[C]ourts have found that violations of the Fourth Amendment constitute irreparable harm sufficient to justify injunctive relief." *Brown v. Greene Cty. Vocational Sch. Dist.*, 717 F. Supp. 3d 689, 696 (S.D. Ohio 2024) (cleaned up).  Defendants deprived Plaintiff of his First and Fourth Amendment rights by imposing the unconstitutional Prior Restraint Order and then using that order to justify ripping off his sticker, and Plaintiff fears further application of the Order and will be irreparably harmed absent injunctive relief.

### 3.5    The Balance of Equities Tips in Plaintiff's Favor

When the government restricts First Amendment rights, the balance of hardships weighs in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) ("the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech"). The balance of equities tips in Plaintiff's favor.  Failing to grant the injunction will continue to deprive him of his constitutional rights pursuant to the First and Fourth Amendments.  Defendants will suffer no harm if Plaintiff is granted the requested injunctive relief.  Rather, an injunction will merely restore the rights guaranteed by the U.S. Constitution.

### 3.6    Injunctive Relief is in the Public Interest

The public interest "favors protecting First Amendment rights." *Kelly v. City of Parkersburg*, 978 F. Supp. 2d 624, (S.D. W.V. 2013); *see also Carey v. FEC*, 791 F. Supp. 2d 121, 135-36 (D. D.C. 2011); *Mullin v. Sussex Cnty., Del.*, 861 F. Supp. 2d 411, 428 (D. Del. 2012). The

- 19 -
Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

public interest is served by issuing an injunction where "failure to issue the injunction would harm the public's interest in protecting First Amendment rights in order to allow the free flow of ideas." *Magriz v. union do Tronquistas de Puerto Rico, Local 901*, 765 F. Supp. 2d 143, 157 (D.P.R. 2011) (citation omitted). Moreover, the unconstitutional actions here harms nonparties to the case because they limit or infringe upon their rights. *See Wolfe Fin. Inc. v. Rodgeres*, 2018 U.S. Dist. LEXIS 64335, at *49 (M.D. N.C. April 17, 2018) (*citing McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights[.]" *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). Nor is there any harm to the interests of justice and a fair trial; demonstrations are not uncommon without such restrictions and a jury can be properly instructed. Thus, the public interest weighs in favor of enjoining Defendants' enforcement of the Second Prior Restraint Order.

### 3.7 At Most, a Minimal Bond Should Be Required

The Court should not require a bond because Defendants will suffer no damages from an injunction against enforcement of an unconstitutional order, *see All-Options, Inc. v. Att'y Gen. of Indiana*, 546 F. Supp. 3d 754, 770–71 (S.D. Ind. 2021), while requiring the posting of a bond would negatively impact Plaintiff's ability to exercise his First and Fourth Amendment rights. If a bond is required, Plaintiff requests that it be a token amount of $1.

### 4.0 Conclusion

Plaintiff has the right to continue wearing his sticker on the public sidewalks. The Court should enter a preliminary injunction (and, in consolidation with a trial on the merits, permanent injunction upon final judgment) against the Defendants, enjoining the Second Prior Restraint Order and preventing them from taking any further action against Plaintiff on account of such and from

- 20 -
Memorandum of Law in Support of Plaintiff's Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

taking any action to try to apply that order. The order should be declared facially invalid or at least

invalid as applied, with further application enjoined.

Dated: April 17, 2025.                                    Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477              Mark. Trammell, Pro Hac Vice
mjr@randazza.com, ecf@randazza.com         Center for American Liberty
Jay M. Wolman, BBO# 666053                 P.O. Box 200942
jmw@randazza.com                           Pittsburgh, PA 15251
RANDAZZA LEGAL GROUP, PLLC                 Tel: (703) 687-6200
30 Western Avenue                          MTrammell@libertyCenter.org
Gloucester, MA 01930
Tel: (978) 801-1776                        *Attorneys for Plaintiff*

- 21 -
Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2025, the foregoing document was served on all prior parties or their counsel of record through the CM/ECF system and informally served on all newly-added parties as follows:

John R. Hitt
Massachusetts Attorney General's Office
One Ashburton Place
Boston, MA 02108
<john.hitt@mass.gov>
*Counsel for Trial Court of Massachusetts, Beverly J. Cannone, and Michael Morrissey*

Janelle M. Austin
KP Law, P.C.
101 Arch Street
Boston, MA 02110
<jaustin@k-plaw.com>
*Counsel for Michael d'Entremont*

/s/ Marc J. Randazza
Marc J. Randazza

Memorandum of Law in Support of Plaintiff's  Motion for a Temporary
Restraining Order and for a Preliminary Injunction
Civil Action No. 1:25-cv-10818